UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Leroy Fields, Jr., | ) | Civil Action No. 5:20-3905-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Kilolo Kijakazi,[1] Acting Commissioner | ) | ORDER |
| of Social Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

his claim for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the

Act"). Plaintiff also filed a Motion to Add Medical Records to File. ECF No. 22. Having carefully

considered the parties' submissions and the applicable law, the court affirms the Commissioner's

decision and denies Plaintiff's Motion to Add Medical Records for the reasons discussed herein.

I.    Relevant Background

A.    Procedural History

On February 8, 2018,[2] Plaintiff protectively filed for SSI alleging he became disabled on

July 12, 2005. Tr. 250. After being denied initially, Tr. 89, and upon reconsideration, Tr. 99,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for Andrew Saul as Defendant in this action.
[2] Although the Application Summary is dated February 22, 2018 and references an application date of February 15, 2018, Tr. 250, based on the Disability Determination and Transmittal, Plaintiff's protected filing date is February 8, 2018, Tr. 89.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 116-17. The ALJ conducted a hearing on March 11, 2020. Tr. 28-80. The ALJ denied Plaintiff's claim in a decision dated March 25, 2020. Tr. 12-23. Plaintiff requested review of this decision from the Appeals Council. Tr. 245-49. On October 13, 2020, the Appeals Council denied the request, Tr. 1-5, making the ALJ's March 25, 2020 decision the Commissioner's final decision for purposes of judicial review. Tr. 1.  Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed November 9, 2020. ECF No. 1.

B.      Plaintiff's Background

Plaintiff was born in July 1985 and was 20 years old at the time of his alleged onset date of July 12, 2005. Tr. 281. In his February 2018 Disability Report-Adult form, Plaintiff indicated that he completed the 11th grade,  attended special education classes in 2004, and did not complete any specialized job training, trade or vocational school. Tr. 276. Plaintiff indicated that he "did not work at all in the last 15 years before [he] became unable to work." *Id.* Plaintiff identified the conditions that limit his ability to work as diabetes, neuropathy, and hypertension. Tr. 275. Plaintiff indicated that he was 5'6" tall, weighed 126 pounds, and his conditions caused him pain or other symptoms. *Id.*

C.      Administrative Proceedings

On March 11, 2020, Plaintiff appeared with counsel at an administrative hearing in Columbia, South Carolina and testified regarding his application for SSI.[3] Tr. 28. Vocational Expert ("VE") Rebecca Bruce also appeared and testified. *Id.* Plaintiff's counsel noted that the administrative record was complete with the late admission of her pre-hearing brief and Plaintiff's

---

[3] On August 21, 2019, Plaintiff appeared without counsel for his scheduled administrative hearing. Tr. 66. After the ALJ explained his right to representation, Plaintiff opted to postpone the hearing because he had an upcoming appointment to meet with an attorney to discuss his case. Tr. 74-75.

certificate of completion from Morris Village. Tr. 34. The ALJ outlined, and counsel confirmed, the issues involved with Plaintiff's claim and his attorney confirmed his diagnoses of uncontrolled diabetes with some neuropathy, substance abuse issues, personality disorder, hiatal hernia, hypertension, hyperlipidemia, some colitis, vitamin D deficiency, diabetes, and incontinence. Tr. 36.

        1.   Plaintiff's Testimony

In response to questions from the ALJ Plaintiff confirmed his name and his current address and stated that he lived with his grandmother. Tr. 38. Plaintiff testified that he was 34 years old and had completed the 11th grade and was four credits shy of graduating. Tr. 38-39. Plaintiff testified that he was not working currently, and he had last worked 10 years ago for Labor Ready Executive Staffing. Tr. 39.

In response to questions from his attorney Plaintiff testified that he is 5'7" tall and weighs 130 pounds. Tr. 41. Plaintiff stated that he has problems with his weight fluctuating and confirmed that doctors have altered his medications based on his weight. Tr. 42. Plaintiff stated that he is currently taking 20 units of Levemir for his diabetes, which was decreased from 25 units that he was taking before going to Morris Village. *Id.*

Plaintiff testified that he has to wear adult diapers because he is unable to control his bowels due to colitis. Tr. 43. He stated that he was told by doctors that his incontinence is also related to his diabetes. *Id.* Plaintiff testified that with his diabetic neuropathy "it's very painful to stand. And then if I sit down too long, it's like I want to stand up, but I know I can't stand up for that long of a time." *Id.* Plaintiff stated that the neuropathy is not in his hands; it is only in his feet. *Id.* Plaintiff confirmed he has hypertension for which he takes 20 milligrams of Lisinopril once daily. Tr. 43-44. Plaintiff testified that he has "deep depression" that stems from him being sexually molested

as a child. Tr. 44-45. Plaintiff affirmed that he is supposed to go to Columbia Area Mental Health. Tr. 45. Plaintiff testified that he is able to drive but he does not have a driver's license because he failed the exam. *Id.* Plaintiff stated that his sister brought him to the hearing, and his mother was also present. Tr. 46. Plaintiff testified that he is able to stand "a good 10 minutes and then it's like [his] feet are screaming." *Id.* He stated that he can sit for 20-30 minutes before needing to get up. *Id.* Plaintiff stated that he is unable to lift "even 30 pounds" because of his bones being fragile due to his weight loss. *Id.* Plaintiff testified that he was not sure how far he could walk without taking a break. *Id.* Plaintiff again confirmed that he was planning to get counseling at Columbia Area Mental Health as recommended. Tr. 47. Plaintiff testified that he is able to dress and bathe himself without help. *Id.* He stated he can make his bed, and although he does not cook, he is able to help around the house when he can. Tr. 47-48. Plaintiff stated that he sometimes does yard work, but he has to take a five-minute break because he gets out of breath and fatigued. Tr. 48. He stated that his grandmother's residence is a house and it has a yard. *Id.* Plaintiff testified that he is able to do laundry and his grandmother does the cooking. *Id.* Plaintiff stated that he has problems with his grandmother because she is in denial about the sexual molestation that Plaintiff states was inflicted by her sons. Tr. 49. Plaintiff stated that is what led to his depression and drug use. *Id.* Plaintiff testified that he was able to get some counseling about that at Morris Village. *Id.* Plaintiff testified that he has one friend in the neighborhood and he is able to walk to his house. *Id.* Plaintiff stated that although he was diagnosed with anger issues, that was not true because he "can get along with anybody, it's just till you do the wrong thing to [him]." Tr. 50. Plaintiff stated that he has problems sleeping because when he wakes up to use the bathroom, he is unable to fall asleep again. *Id.*

The ALJ resumed questioning of Plaintiff and asked if he was taking medication for the numbness and tingling in his feet. Tr. 51. Plaintiff stated he was taking "Gabapentin, but it doesn't

work, sir." *Id.* Plaintiff stated that he told his doctors but they have not changed his medication or done any testing on his feet. Tr. 52. Plaintiff stated that he had not had any counseling for his mental health issues before his recent stay at Morris Village. *Id.* Plaintiff testified that the reason he went to Morris Village was because of issues with cocaine use. Tr. 52-53. Plaintiff stated that he started using when he was 19 years old, but now he was doing well and was clean although he was trying to get away from his house because it is in a drug area. Tr. 53. Plaintiff testified that when he went to Morris Village, he was using a gram of cocaine a day and he got the money for drugs by pan handling. Tr. 53-54. The ALJ noted that the records indicated that at one time Plaintiff had problems getting his medications. Plaintiff stated that has been resolved as he now gets his medicine through Well Vista [sic][4] and has been for at least a year. Tr. 54. Plaintiff testified that he has noticed positive improvements with his diabetes since taking his medications on a regular basis, but no change with his gastroparesis and colitis. Tr. 55. Plaintiff testified that in addition to the Levemir he is also on Novolog for his diabetes. *Id.* Plaintiff testified that he has been having bathroom-related issues for 10 years and it is not getting any better. Tr. 56. Plaintiff stated that he has asked doctors for medication and they say that they will prescribe him some medicine but then never prescribe anything. *Id.* Plaintiff confirmed that he has had a colonoscopy and that was when they found inflammation and colitis. Tr. 56-57.

Plaintiff stated that he has to depend on his sister for transportation and she is not always reliable because "she has her own family, sir." Tr. 57. Plaintiff stated that he could take the bus, but he has no money for the bus. Tr. 58. Plaintiff testified that if he had the money, he would be

---

[4] "Founded in 1991, Welvista is a 501(c)3 organization that helps uninsured and underserved South Carolinians gain access to essential health services while reducing the long-term costs of health care that result from untreated conditions. In 2019, Welvista filled more than 304,300 free prescriptions in the treatment of chronic disease for 25,700 patients, at an average wholesale value of more than $188 million." *See* https://www.welvista.org/about/ (last visited Jan. 31, 2022).

able to navigate riding the bus to get to the right place. *Id.* Plaintiff testified that he is able to shop and he typically goes to the store every two weeks. *Id.* Plaintiff stated that it was hard to shop for clothes because he does not have money, but he gets food stamps and he was able to get that set up himself without any assistance. Tr. 58-59. Plaintiff stated that his sister is usually the person who takes him to the store. Tr. 59. Plaintiff confirmed that in April 2018 he was walking for exercise as recommended by his doctors, but when he walked his legs would "give out." *Id.* Plaintiff testified that it had been a while since he tried to exercise and although he could not say how long, he noted it was before going to Morris Village. *Id.*

2. VE's Testimony

The ALJ noted that Plaintiff had no past relevant work ("PRW"), and he asked the VE to assume an individual of Plaintiff's age, education, and past work experience with the following limitations: "this individual would be limited to medium levels of exertion, except this individual can climb ladders, ropes, scaffolds, ramps, stairs and can frequently balance, this individual can tolerate occasional exposure to extreme heat, extreme cold and vibration[.]" Tr. 61. The ALJ asked if there were any jobs in the national economy that an individual with those limitations could perform and the VE identified the following examples: kitchen worker, Dictionary of Occupational Titles ("DOT") 318.687-010, specific vocational preparation ("SVP") of 2, exertional level of medium, with 30,610 jobs in the national economy; janitor, DOT 381.687-018, SVP of 2, exertional level of medium, with 908,700 jobs in the national economy; and grounds keeper, DOT 406.687-010, SVP of 2, exertional level of medium, with 51,000 jobs in the national economy. Tr. 62.

For his second hypothetical the ALJ asked the VE to assume the same individual as in the first hypothetical but limited to sedentary levels of exertion. Tr. 62. The VE affirmed there would

be jobs available in the national economy and identified the following: toggle press folder, DOT 690.686-066, SVP of 2, sedentary, 2,400 jobs in the national economy; weight tester, DOT 539.485-010, SVP of 2, sedentary, with 175,000 jobs in the national economy; and stringing machine operator,[5] DOT 689.585-018, SVP of 2, sedentary, with 6,100 jobs in the national economy. *Id.*

The ALJ asked the VE what percentage of time off task that employers would tolerate throughout the regular workday for any reason. Tr. 63. The VE responded that this "is not addressed in the DOT, however, based on [her] 40+ years of on-site experience with employers, [she] would say the maximum amount of off time would be 5% or about half an hour." *Id.* The VE confirmed that anything above that amount would result in employers saying that was too much and they could not work. *Id.* The VE testified the remainder of her testimony was consistent with the information contained in the DOT. *Id.*

Plaintiff's counsel had no questions for the VE. Tr. 64. In closing Plaintiff's attorney noted that some of the jobs would be difficult for Plaintiff because of his inability to stand for a long period of time, and that he would be off task because of the incontinence. *Id.*

II.    Discussion

A.    The ALJ's Findings

In his March 25, 2020 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.    The claimant has not engaged in substantial gainful activity since February 8, 2018, the application date (20 CFR 416.971 *et seq.*).

---

[5] The hearing transcript reflects a title of "streaming" machine operator. However, based on the DOT number, the correct title is "stringing" machine operator. DICOT 689.585-018, 1991 WL 678364.

2.      The claimant has the following severe impairments: uncontrolled diabetes mellitus with neuropathy (20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(b) except he can frequently climb ladders, ropes, scaffolds, ramps, and stairs, and can frequently balance. He can tolerate occasional exposure to extreme heat, extreme cold, and vibration.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on July 12, 1985 and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 CFR 416.963).

7.      The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since February 8, 2018, the date the application was filed (20 CFR 404.920(g)).

Tr. 17, 19, 21-22.

B.      Legal Framework

        1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[6] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding

---

[6] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S.

389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff alleges the ALJ (1) failed to properly consider records from Morris Village, (2) failed to properly analyze his diagnoses and mental impairments, (3) failed to consider his physical and mental impairments in combination, and (4) failed to consider Plaintiff's lack of education. Pl.'s Br., ECF No. 18. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff was not disabled during the relevant period. Def.'s Br. 2, ECF No. 19.

1. ALJ's Consideration of Morris Village Records

Plaintiff asserts that he struggles with drug addiction and his rehabilitation treatment notes were "never adequately considered by the ALJ." Pl.'s Br. 2. Plaintiff argues there is no analysis in the ALJ's decision of "the possible debilitating effects of substance abuse" and it was as if Plaintiff "never went to Morris Village for treatment even though the hearing was postponed because of this treatment." *Id.* at 2-3. The Commissioner contends that review of the ALJ's decision reveals the ALJ thoroughly considered Plaintiff's drug use, both Plaintiff and his attorney testified at the hearing that his substance abuse issues were now controlled, and the ALJ cited to the progress notes from Morris Village. Def.'s Br. 10, 12. Citing to the Social Security Act,[7] Defendant also argues that "[t]o the extent that Plaintiff is arguing that the ALJ should have found Plaintiff disabled due to substance abuse, the governing statute itself prohibits such a finding." *Id.* at 12-13.

On January 22, 2020, Plaintiff was admitted to Morris Village. Tr. 517. His diagnoses included Cocaine Use Disorder Severe, Depression, Diabetes Mellitus, Diabetic Gastroparesis, Hypertension, Hyperlipidemia. *Id.* The treatment records indicated Plaintiff "did not have significant withdrawal symptoms and did not require a detoxification regimen during his first week of hospitalization." Tr. 518. Upon completion of his treatment goals, Plaintiff was referred for continued outpatient treatment. *Id.* Plaintiff was discharged on February 18, 2020 after successfully completing the requirements of treatment. Tr. 538.

At Step Two of the sequential evaluation process, the ALJ identified several non-severe impairments of Plaintiff including remote diagnoses of marijuana abuse and cocaine use disorder.

---

[7] "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(C).

Tr. 18. The ALJ discussed Plaintiff's hearing testimony and cited to the very records Plaintiff

contends the ALJ did not consider when setting out the results of a mental status examination. *Id.*

The ALJ also cited to the Morris Village treatment notes when discussing Plaintiff's drug use and

noted:

> Furthermore, the undersigned fully recognizes that the claimant has a history of
> substance abuse (Exhibits 1F and 9F). However, the evidence is sufficiently
> convincing to establish that the claimant would remain limited to the confines
> of the residual functional capacity regardless of the impact of substance use.
> Moreover, the claimant maintains his sobriety at this time.

Tr. 19. The ALJ clearly considered the records from Morris Village in reaching his conclusions,

and the undersigned finds Plaintiff's argument to be without merit.

2.    ALJ's Consideration of Plaintiff's Mental Health Diagnoses/Impairments

Plaintiff asserts the ALJ "failed to fully analyze the claimant's symptoms and diagnoses of

mental impairments under the steps outlined in 20 CFR Section 404.1520a(e)."[8] Pl.'s Br. 3.

Plaintiff also contends the "ALJ should have ordered a psychiatric exam of the claimant." *Id.* at 4.

The Commissioner asserts that substantial evidence supports the ALJ's assessment of Plaintiff's

mental impairments. Def.'s Br. 13. The Commissioner also argues that Plaintiff "fails to point to

any evidence of record that supports a finding that he experienced any functional limitations as a

result of his mental impairments." *Id.* at 14.

The regulations provide steps that must be applied in evaluating mental impairments. *See*

20 C.F.R. § 416.920a. The ALJ must follow a "special technique" to determine the severity of a

claimant's mental impairments. 20 C.F.R. § 416.920a(a). Under the special technique, the ALJ

first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to substantiate the

presence of a medically determinable mental impairment. *Id.* § 416.920a(b)(1). Then the ALJ rates

---

[8] Because Plaintiff's claim is one for SSI, the appropriate regulation is 20 C.F.R. § 416.920a.

the claimant's degree of functional limitation resulting from the impairment. *Id.* § 416.920a(b)(2). The rating determines whether the claimant's impairment is severe or not severe. *Id.* § 416.920a(d). The ALJ considers four broad functional areas in order to rate a claimant's degree of functional limitation: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* § 416.920a(c)(3); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C. The ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id.* § 416.920a(c)(2); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the functional areas consist of a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 416.920a(c)(4). SSR 96-8p provides that in assessing a claimant's mental residual functional capacity ("RFC") the ALJ should consider "[w]ork-related mental activities generally required by competitive, remunerative work [which] include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." 1996 WL 374184, at *6.

Here, the ALJ determined Plaintiff had the medically determinable mental impairments of personality disorder and depression,[9] but found that these impairments, "considered singly, and in

---

[9] Plaintiff argues that he also has anxiety and post-traumatic stress disorder. Pl.'s Br. 2; Pl.'s Reply 2, ECF No. 20. However, the medical evidence of record contains no diagnoses for these disorders and Plaintiff cites to none. Furthermore, the undersigned notes that in applying for SSI Plaintiff did not identify any mental impairments that impeded his ability to work. In his Disability Report the only conditions he identified were diabetes, neuropathy, and hypertension. Tr. 275. At the administrative hearing, the ALJ outlined the relevant issues with Plaintiff's counsel and she concurred with the mental issues of personality disorder and depression. Tr. 36. Counsel stated that the "major problems that prevent him from working are stemming from the colitis and the diabetes and the fact that he's incontinent and that seems to be . . . the major reason why he can't

combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Tr. 18. As required by the regulations, the ALJ documented application of the special technique and found Plaintiff had no limitations in the area of understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in the functional area of concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself. *Id.* Citing to Plaintiff's hearing testimony and mental status examinations, the ALJ noted Plaintiff's "testimony of activities coupled with the medical record demonstrate his ability to understand, remember and apply information, maintain appropriate social interaction, maintain concentration, persistence and pace on tasks, and manage himself." *Id.* The ALJ found that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 416.920a(d)(1))." Tr. 19 (emphasis in original). The ALJ concluded his special technique assessment by stating that the limitations he identified are not an RFC assessment but are used to rate the severity of mental impairments, and that his mental RFC assessment at Steps Four and Five required a more detailed assessment. *Id.* The ALJ stated that his RFC reflects the degree of limitation he found in the mental functional analysis. *Id.*

   "[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d at 1166 (citing *Sitar v. Schweiker*, 671 F.2d 19, 20–21 (1st Cir. 1982)). Here the ALJ considered the evidence in making his mental functional

---

work and the major reason why he feels bad." Tr. 37. During his testimony, Plaintiff cited only to depression when asked about his mental issues. Tr. 44.

assessment. The ALJ performed the special technique for assessing the severity of a claimant's mental impairments and adequately documented his evaluation of Plaintiff's mental impairments. Tr. 18. Upon review of the record, the court finds that the ALJ properly assessed Plaintiff's mental RFC and his conclusion is supported by substantial evidence.

As to Plaintiff's contention that the ALJ should have ordered a psychiatric exam for him, there was no reason for the ALJ to do so. "[T]he regulations state that the ALJ has discretion in deciding whether to order a consultative examination. The regulations further provide that a consultative examination is required when the evidence as a whole is insufficient to support a decision." *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) (citing 20 C.F.R. §§ 404.1519a, 416.919a (2002)). The ALJ referenced treatment records indicating normal mental status exams and indicating Plaintiff "showed good attention span, good memory, good eye contact, no hallucinations, and cooperative attitude and behavior[.]" Tr. 18. The record before the ALJ was adequate to support his conclusions regarding Plaintiff's mental impairments. Accordingly, the ALJ was under no obligation to request a psychiatric exam.

### 3. ALJ's Consideration of Plaintiff's Combined Impairments

Plaintiff argues that a combination of physical and mental impairments prevents him from working and that the "ALJ has failed to factor the physical-plus-mental limitations into his analysis." Pl.'s Br. 4. The Commissioner asserts the ALJ fully considered the combined effects of Plaintiff's impairments and remand is not proper. Def.'s Br. 14-16. The Commissioner also notes that Plaintiff has not demonstrated that the ALJ's decision would have been different "had he further discussed the combined effect analysis of Plaintiff's multiple impairments," nor did Plaintiff point to any evidence supporting a correlation between his colitis and mental impairments. *Id.* at 16.

The regulation related to the consideration of multiple impairments provides that in determining whether an individual's physical or mental impairments "are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility" for benefits, the ALJ "will consider the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If the ALJ finds a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. *Id.* In *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989), the court held that "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* at 50. The Fourth Circuit has not elaborated on what serves as adequate explanation of the combined effect of a claimant's impairments. *See Cox v. Colvin*, No. 9:13-2666-RBH, 2015 WL 1519763, at *6 (D.S.C. Mar. 31, 2015); *Latten-Reinhardt v. Astrue*, No. 9:11-881-RBH, 2012 WL 4051852, at *4 (D.S.C. Sept. 13, 2012). However, this court has specified that "the adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments." *Brown v. Astrue*, C/A No. 0:10-CV-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012), (citing *Green v. Chater*, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. 1995)). Further, absent evidence to the contrary, the courts should accept the ALJ's assertion that he has considered the combined effect of the claimant's impairments. *See Reid v. Comm'r of Social Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

The ALJ found Plaintiff had the severe impairments of diabetes mellitus with neuropathy and the non-severe impairments of remote diagnoses of marijuana abuse and personality disorder, hiatal hernia, hypertension, hyperlipidemia, colitis, vitamin D deficiency, cocaine use disorder, and depression. Tr. 17-18. The ALJ stated that he "considered all of the claimant's medically

determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." Tr. 18. The ALJ found that Plaintiff's medically determinable mental impairments, "considered singly, and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities . . . ." *Id.* He further found that Plaintiff did not have "an impairment or combination of impairments" that met or medically equaled the severity of a listed impairment. Tr. 19. It is evident to the court that the ALJ did, in fact, consider the combined effects of Plaintiff's impairments and, thus, accepts the truth of the ALJ's assertion. *Reid v. Comm'r of Social Sec.*, 769 F.3d at 865.

Plaintiff also notes, without any elaboration, that he "often did not have the funds to obtain his diabetic medication." Pl.'s Br. 4. In his Reply Brief he argues the "ALJ and Defendants blame the Plaintiff for non-compliance with medication he cannot afford" and that "[w]ithout insurance or the ability to work, the claimant simply cannot afford diabetic medication." Pl.'s Reply 2-3.

In his discussion of Plaintiff's impairments at Step Two, the ALJ noted:

> Here, the claimant reported noncompliance with his treatment regimen, to include not taking medication as prescribed and not being compliant with his diet (Exhibit 7F4). Additionally, as noted in the treatment notes dated October 27, 2017, the claimant has been out of medication for his hypertension for several months, he is not taking any supplement for his vitamin D deficiency, and his colitis is stable despite occasional symptoms (Exhibit 7F4). Despite such non-compliance, it does not appear that the claimant's conditions have manifested in any significant symptomology.

Tr. 18. The record cited by the ALJ regarding Plaintiff's non-compliance is an October 27, 2017, routine follow-up appointment at Palmetto Health - Celia Saxon Health Center. Tr. 468. The note indicates Plaintiff had missed several appointments and was last seen a year earlier on October 26, 2016. *Id.* The note also indicates that Plaintiff had been out of his hypertension medication for months and Plaintiff stated he was not compliant with his diet and continued to smoke "at least a half a pack of cigarettes a day." *Id.* As to his diabetes, the record notes that Plaintiff indicated that

"he has been out of his Levemir as well for several months, only has a NovoLog insulin that he is taking 13 units with each meal." *Id.* The note indicates that Plaintiff was asked why he was missing appointments and not taking better care of himself and Plaintiff responded, "no one would give him a ride to his appointments and that his family members just do not help him." *Id.*

In his consideration of Plaintiff's statements regarding his symptoms, the ALJ noted:

> According to the medical record, the claimant has a history of insulin dependent diabetes mellitus and hyperlipidemia (Exhibit 2F6). However, the claimant also has a history of not taking his insulin as prescribed (Exhibits 2F6, 4F7, and 6F21). It is noted in the record that the claimant is consistently noncompliant with his diabetes care and even when he was presented to the emergency room with elevated blood sugar, he remained stabled [sic] after receiving insulin (Exhibit 2F7). Additionally, despite a diagnosis of painful diabetic neuropathy, the claimant seeks only sporadic care, and ignores the advice of professionals with respect to glucose and hypertension monitoring, taking medication, and his diet (Exhibits 7F and 8F). Furthermore, the claimant's physical examinations were relatively normal aside from some swelling in the left foot in July 2018 (Exhibit 8F17).

Tr. 20. The records cited by the ALJ reflect the following:

- Exhibit 2F/6:  August 28, 2012 Emergency Department admission for elevated blood sugar. The notes indicate: "He says for the last month, he has not been taking his insulin because it was out of date and he did not have the right paperwork to get a prescription refill. He has been asymptomatic other than some polyuria and just presents because he was asked to come over here by his PCP [primary care provider]." Tr. 339.
- Exhibit 2F/7:  The Emergency Department noted that Plaintiff was treated for his elevated blood sugar and would be discharged. The record also noted that "He has the paperwork that he just needs to take so he can get new prescription refills for his standard dose of insulin. I have counseled him that he needs to get on his insulin, otherwise, he is going to have severe medical complications, and he agreed to do so." Tr. 340.
- Exhibit 4F/7:  December 20, 2013 Progress Note form Celia Saxon Health Center. Report noted "Compliance problems: with diet, with medications, [patient] states he eats a lot of fast food and junk food and admits that he needs to do better. He also says that he takes his metformin BID as prescribed but doesn't take his insulin regularly [because] he doesn't like to stick himself with needles. He states he only takes his insulin when he feels 'really bad' and not with weight management." Tr. 368.

- Exhibit 6F/21: Discharge notes from hospital admission on August 3, 2017. The Discharge Summary indicates Plaintiff was admitted for intractable vomiting and hyperglycemia. The note indicates that Plaintiff "is consistently noncompliant with diabetes care." Tr. 426.
- Exhibits 7F and 8F: These exhibits contain duplicates of the same records from Palmetto Health-Celia Saxon Health Center. Tr. 469-515. An October 27, 2017 appointment record indicates all of Plaintiff's prescribed medications were through Welvista.[10] Tr. 469. A February 14, 2018 note indicates, regarding Plaintiff's diabetes, that "patient is non-compliant, still not taking his insulin as prescribed and still eating what he wants to; eats bread 3-4 [ ] times a day, drink sweet ice tea daily, as well as soda and juice." Tr. 473, 490.

Plaintiff now argues he was non-compliant with diabetes treatment because he could not afford his medication. However, there is no indication that his inability to pay was ever raised before the ALJ. An individual's medical treatment history is one of the factors that an ALJ may consider in assessing his symptomology. SSR 96–7p, 2017 WL 5180304 at *7-8. However, the ALJ is to consider possible reasons why a claimant may not comply with treatment including whether an "individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* at *9-10. Fourth Circuit precedent directs that ALJs may not deny benefits to claimants who lack the financial resources to obtain treatment. *See Lovejoy v. Heckler,* 790 F.2d 1114, 1117 (4th Cir. 1986) (holding that the ALJ erred in determining that the plaintiff's impairment was not severe based on her failure to seek treatment where the record reflected that she could not afford treatment); *Gordon v. Schweiker,* 725 F.2d 231, 237 (4th Cir. 1984) ("it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him").

The record supports the ALJ's findings as to Plaintiff's noncompliance with his treatment regimen, including following a proper diet and taking his medications as prescribed. There is no

---

[10] As noted previously in this Order, Welvista is a charitable organization that provides free prescription medication.

indication in the record that Plaintiff ever raised an inability to pay for medication to the ALJ.

However, at the administrative hearing the ALJ raised the issue of Plaintiff's prior noncompliance,

noting there were records indicating Plaintiff had trouble getting his medication. Tr. 54.

> Q   Okay. Now, there have been some times in the past it looks like in some of the records that I have you've had trouble getting your medications.
>
> A   Yes, sir.
>
> Q   Looks like they had you on blood pressure medications, it looks like they've had you on diabetic medications, and then of course, they've also had you on the Gabapentin over time.
>
> A   Yes, sir.
>
> Q   Do you have a way now, I mean, are you – you've indicated now that you're more compliant with those than you've been in the past.
>
> A   Yes, I --
>
> Q   How are you getting those medications?
>
> A   They got me at Well Vista.
>
> Q   Okay. When did they start you with Well Vista?
>
> A   I've been having Well Vista for a little minute now, sir.
>
> Q   Okay. Well, how long would that be?
>
> A   I'm not sure, like a year.
>
> Q   Okay. And since that -- since you've been able to get Well Vista, you've been able to have better access to medications?
>
> A   Yes, sir.

Tr. 54. There is some evidence in the record that Plaintiff neglected to take his medication for

reasons other than the ability to pay for it. For example, at one visit Plaintiff stated that he did not

have the right paperwork to get a prescription refill. Tr. 339. At another visit he told the nurse that

he did not take his insulin regularly because he did not like to stick himself with needles. Tr. 368.

Plaintiff provides no evidence in the record regarding an inability to pay for medication. Actually, the record shows just the opposite—Plaintiff had access to low cost or free medical treatment and prescription drugs. Furthermore, Plaintiff's noncompliance was not the sole basis for the ALJ's denial of benefits. *King v. Colvin*, No. CIV.A. 6:12-3043-TMC, 2014 WL 906795, at *2 (D.S.C. Mar. 7, 2014) (finding an ALJ's failure to discuss a claimant's inability to afford treatment was harmless error where failing to seek treatment was "one factor the ALJ considered, but not the only factor or even the deciding factor"). The undersigned concludes the ALJ decision is supported by substantial evidence.

4.   ALJ's Consideration of Plaintiff's Educational Level

Plaintiff's final allegation of error is that although the ALJ acknowledged his limited education, the ALJ failed to consider "the actual effects" of his limited ability to read and understand. Pl.'s Br. 4. The Commissioner contends there is no evidence that Plaintiff is illiterate and notes that in his attorney's pre-hearing brief his "representative indicated that he had completed 11th grade, and could read and write (Tr. 325)." Def.'s Br. 17. The Commissioner also cites Plaintiff's hearing testimony where he testified that he needed only four credits to graduate high school. *Id.* The Commissioner further argues that all of the jobs identified by the VE are unskilled, with a specific vocational profile of 2, and complied with the hypothetical posed by the ALJ of an individual with Plaintiff's educational background. *Id.*

Here, the ALJ found that Plaintiff has a limited education. Tr. 21. Under the regulations, a limited education "means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 416.964(b)(3). Formal education of 7th grade through the 11th grade level  is considered a limited education. *Id.* In contrast, "an illiterate person

has had little or no formal schooling," and a marginal education is "formal schooling at 6th grade level or less." 20 C.F.R. § 416.964(b)(1)-(2). At the administrative hearing Plaintiff testified that he "completed the 11th grade" and that he "only needed like four credits to graduate, though." Tr. 39. Regarding his ability to function, Plaintiff testified that if he had the funds to take public transportation, he would be able to get on the bus and get on and off at the right place. Tr. 58. He also testified that he is able to shop, and that when he acquired food stamps, he "set it up for [him]self." Tr. 58-59.

At Step Five of the sequential evaluation process, it is the ALJ's responsibility to provide "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his RFC] and vocational factors." 20 C.F.R. § 416.960(c)(2). The ALJ determined Plaintiff's ability to perform the full range of medium level work has been impeded by additional limitations. Tr. 21-22. "To determine the extent to which these limitations erode the unskilled medium occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." Tr. 22. The vocational expert testified that given all of these factors the individual would be able to perform the medium level jobs of kitchen worker, janitor, and grounds keeper and even if limited to the sedentary level he would be able to perform the jobs of toggle press folder, weight tester, and stringing machine operator. *Id.* All of the identified jobs are unskilled with an SVP level of 2. *Id.* SVP is "defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App. C, 1991 WL 688702. An SVP level of 2 is defined as "[a]nything beyond short demonstration up to and including 1 month." *Id.* "Unskilled work is work which needs little or no judgment to do simple duties that can be

learned on the job in a short period of time." 20 C.F.R. § 416.968(a). To the extent Plaintiff is asserting the ALJ failed to consider the impact of his limited education on the occupational base, the court finds that argument would be unavailing as the Medical-Vocational Guidelines would direct a conclusion of "not disabled" for a younger individual with limited or less education and unskilled or no previous work experience. 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rule 203.18; *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rules 201.00(i), 202.00(g) (providing that "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance" and that the capability for sedentary and light work reflects "substantial vocational scope" for claimants aged 18 to 49 even if "illiterate or unable to communicate in English"); 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rule 203.00 ("The functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work.").

Plaintiff has not shown any error resulting from the ALJ's consideration of his education; this allegation is dismissed.

      D.     Plaintiff's Motion to Add Medical Records to File

On October 21, 2021, Plaintiff filed a motion asking the court to consider additional medical records from September and October 2021 related to surgery for a diabetic ulcer that resulted in having part of his right leg amputated. ECF No. 22. Plaintiff asks the court to reverse or remand the decision of the Appeals Council and award him disability benefits. *Id.* at 2. The Commissioner contends that because these records post-date the relevant period under consideration by the court by more than a year, remand is inappropriate. ECF No. 27.

Plaintiff filed his application for SSI on February 8, 2018, alleging a disability onset date of July 12, 2005. Tr. 250. The ALJ issued his decision denying Plaintiff's claim on March 25, 2020, Tr. 15-22, and on October 13, 2020, the Appeals Council denied Plaintiff's request for review of that decision, Tr. 1. Plaintiff filed his Complaint in this action on November 9, 2020, ECF No. 1, and almost one year later filed the instant motion seeking to add new evidence. The records Plaintiff wants the court to consider are medical records for surgical procedures that occurred well after the ALJ rendered his decision. Plaintiff's new evidence does not relate to the time period for which SSI was denied. When reviewing an ALJ's decision, the court is limited to the administrative record. 42 U.S.C. § 405(g); *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972) ("Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence."). Accordingly, the court cannot consider the new evidence because it has not been considered by the Commissioner or Appeals Council in the first instance. Accordingly, Plaintiff's motion is denied.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed. Additionally, Plaintiff's Motion to Add Medical Records to File, ECF No. 22, is denied for the foregoing reasons.

IT IS SO ORDERED.

February 7, 2022                                     Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge